Merchants Acceptance Company v. Commissioner.
Merchants Acceptance Co. v. Commissioner
Docket No. 1323-62.
United States Tax Court
T.C. Memo 1964-149; 1964 Tax Ct. Memo LEXIS 188; 23 T.C.M. (CCH) 896; T.C.M. (RIA) 64149; May 28, 1964
Leo J. Schwartz, 33 N. LaSalle St., Chicago, Ill., and Julian L. Berman, for the petitioner. Donald W. Geerhart, for the respondent. DAWSON
Memorandum Findings of Fact and Opinion DAWSON, Judge: Respondent determined a deficiency in the income tax of petitioner for the fiscal year ending September 30, 1959, in the amount of $71,678.79. The sole issue for decision is whether the gain realized by petitioner, a commercial finance company, upon the sale of certain of its notes receivable is to be taxed as a capital gain or as ordinary income. Findings of Fact Many of the facts have been stipulated by the parties. Their stipulation, together with attached exhibits, is incorporated herein by this reference. Merchants Acceptance Company (hereinafter referred to as petitioner) is an Illinois corporation presently *189 having its principal place of business at 818 Republic National Bank Building, Dallas, Texas. Its Federal income tax return for the fiscal year ending September 30, 1959, was filed with the district director of internal revenue, Dallas, Texas. For a number of years prior to October 31, 1958, petitioner was actively engaged in the operation of a commercial finance business in the Chicago, Illinois, area. In connection with this business it acquired, and held for collection in the ordinary course of its trade or business, a substantial inventory of notes receivable. Such notes receivable represented, in general, two types of loans, the first being direct loans made by petitioner to debtors secured by either the debtor's equipment ("commercial loans on collateral"), inventory ("inventory loans"), or accounts receivable ("assigned accounts receivable") and the second being so-called commercial installment paper discounted with petitioner by dealers in various kinds of commercial and industrial equipment. The latter type of note was acquired by petitioner without recourse to the equipment dealer, although a part of the acquisition price was held back by petitioner as a dealer reserve *190 to insure performance of the equipment. Both the commercial loans on collateral and the commercial installment paper were acquired by petitioner at a discount. When a note was so acquired, 20 percent of such discount was treated by petitioner as an acquisition fee and immediately taken into income while the remaining 80 percent of the discount was set up on its books as deferred income. Petitioner then used the sum of the digits, or 78th, method in computing the transfer from deferred income to earned income. The use of this method is illustrated by the following example. Petitioner acquires a non-interest bearing note in the face amount of $1,800, payable in twelve monthly installments of $150, for $1,683 - a discount of $117. It immediately takes into income $23.40 thereof (20 percent) and sets up the remaining $93.60 (80 percent) as deferred income. A portion of such deferred income is transferred to earned income each month, regardless of whether the installment payment then due is or is not paid, as follows: At the end
Fractional
Earned
Deferred
of the
part earned
Income
Income
1st mo.
12/78
$14.40
$79.20
2nd mo.
11/78
13.20
66.00
3rd mo.
10/78
12.00
54.00
4th mo.
9/78
10.80
43.20
5th mo.
8/78
9.60
33.60
6th mo.
7/78
8.40
25.20
7th mo.
6/78
7.20
18.00
8th mo.
5/78
6.00
12.00
9th mo.
4/78
4.80
7.20
10th mo.
3/78
3.60
3.60
11th mo.
2/78
2.40
1.20
12th mo.
1/78
1.20
0
*191 Sometime in 1958, for reasons not here material, petitioner's officers determined that a sale of its inventory of notes receivable would be desirable. To this end, one of petitioner's officers, Seymour Bernstein, contacted James R. Talcott, Inc., a large commercial finance company. Talcott advised that it was interested in purchasing certain of petitioner's notes receivable which it considered "prime" together with petitioner's office furniture and fixtures. The parties therefore entered into an agreement on October 15, 1958, whereby petitioner agreed to sell, and Talcott agreed to buy, petitioner's furniture and fixtures located in its Chicago office and certain of petitioner's notes receivable (the purchase price for such notes receivable to be computed on the basis of their status as of the close of business on October 31, 1958). This agreement of sale, modified in certain inconsequential respects, was consummated on or about November 14, 1958. The following schedule shows the selling price, basis, and gross gain realized by petitioner on the sale of its notes receivable to Talcott pursuant to the October 15, 1958 agreement: Selling Price
Basis
Gross Gain
Commercial Loans on Collateral
$ 922,421.32
$ 895,784.66
$ 26,636,66
Commercial Installment Paper
2,179,543.48
2,011,916.77
167,626.71
Assigned Accounts Receivable
1,450,277.32
1,450,277.32
0
Inventory Loans
61,516.29
61,516.29
0
Total
$4,613,758.41
$4,419,495.04
$194,263.37
*192 After the above sale petitioner retained notes receivable with net balances of $1,142,186.77. As of October 31, 1958, petitioner's deferred income on its commercial installment paper sold to Talcott was $199,963.60 while its deferred income as of the same date on its commercial loans on collateral was $53,273.32. On its Federal income tax return for the fiscal year ending September 30, 1959, petitioner reported the gain realized on the sale of its notes receivable to Talcott ($194,263.37) as capital gain. In his notice of deficiency respondent determined that this $194,263.37 constituted "ordinary income from the sale of your [i.e., petitioner's] accounts and notes receivable which were acquired by you in the ordinary course of your business for services rendered * * *." By way of an amendment to his Answer herein respondent raised the following: (h) The gain realized by petitioner from the sale of its accounts and notes receivable to Talcott in the amount of $194,263.37 consisted exclusively of the unamortized discount (deferred income) included in the selling price as shown by the following computation: Portion of deferred in-
come included in selling
price: on "Commercial Loans on
Collateral"
$ 26,636.66
on "Commercial Install-
ment Paper"
168,150.88
$194,787.54
Less: Subsequent reduc-
tion in selling
price
524.17
$194,263.37
*193 (i) The entire gain of $194,263.37 realized by petitioner from the aforesaid sale to Talcott represented the present cash value, as of the date of sale, of petitioner's right to earn the total unamortized discount pertaining to certain of the loans sold by holding those loans to maturity and collecting them in the ordinary course of business. (j) The entire gain of $194,263.37 constituted an acceleration of, and a substitution for, ordinary income of the very type petitioner had previously derived in the ordinary course of its trade or business. Opinion It is respondent's position that the gain realized by petitioner on the sale of its notes receivable to Talcott was ordinary income. This is so, he contends in the first instance, because such gain derived from the sale of noncapital assets, i.e., "notes receivable acquired in the ordinary course of trade or business for services rendered" which are specifically excluded from the capital asset category by section 1221(4) [1] of the 1954 Code. Alternatively, respondent contends that the controverted gain is ordinary income because, in substance, it does not represent an accretion in the value of a capital asset, but merely the *194 present commutated value of petitioner's right to receive future ordinary interest income. Petitioner maintains that the gain which it realized from the Talcott sale was properly characterized by it as capital gain since it arose from the sale of property which is not specifically excluded from the category of capital assets by any subsection of section 1221. As to respondent's alternative contention - raised by way of amended answer - petitioner maintains that this is in effect a departure from the theory of deficiency assigned by respondent in his notice as to which the burden of proof is upon him. As we see it, what is basically at issue here is whether the gain realized by petitioner upon the sale of its notes receivable is capital gain or ordinary income. Respondent determined that it was ordinary income and the burden of proof on this *195 issue rests with petitioner. The amendment to respondent's answer, postulating the alternative theory that the gain in question is not capital gain because it does not represent an accretion in value of a capital asset, does not constitute new matter the burden of proving which is upon respondent. There is no inconsistency between the theory advanced in the notice and that advanced by way of amended answer, for inherent in both is the determination that there was not the sale of a capital asset. Cf. . Assuming, without deciding, that petitioner is correct in its contention that its notes receivable are not specifically excluded from the capital asset category by any of the subsections of section 1221, and that such notes are "property" within the meaning of that section, still, as the Supreme Court has said in at 134: * * * not everything which can be called property in the ordinary sense and which is outside the statutory exclusions qualifies as a capital asset. This Court has long held that the term 'capital asset' is to be construed narrowly in accordance *196 with the purpose of Congress to afford capital-gains treatment only in situations typically involving the realization of appreciation in value accrued over a substantial period of time, and thus to ameliorate the hardship of taxation of the entire gain in one year. We do not believe that the gain realized by petitioner upon the sale of its notes receivable can realistically be viewed as representing an "appreciation in value accrued over a substantial period of time." We agree with respondent that such gain, in substance, represented nothing more than the present commutated value of petitioner's right to earn future ordinary income in the form of interest upon these notes. Where the substance of what is sold is the right to receive future income, and the substance of what is received is the present value of that income which the recipient would otherwise obtain in the future, then the consideration paid is ordinary income. . But petitioner contends that: "the crucial issue is whether the sale is a present sale of the right to earn income in the future or whether the sale is the sale of earned or accrued income, *197 to be paid in the future." We are in agreement with the Court of Appeals for the Fifth Circuit that "[this] distinction finds no support in the decisions." (C.A. 5, 1963) and cases there cited. [2] See also (C.A. 5, 1962). What petitioner sold to Talcott were its notes receivable together with its legal right to receive interest income upon the same. To the extent that the purchase price paid represented the present value of this legal right to receive future interest income, it is ordinary income to petitioner. Finally, petitioner contends that at least a part of the gain realized by it on the Talcott sale is allocable to the sale of goodwill. Aside from the obvious fact that the October 15, 1958, contract of sale allocates the entire sales price to the notes receivable and makes no mention of goodwill, petitioner has failed to introduce any proof with respect to this point. On balance, we therefore conclude that no part of the purchase price paid petitioner *198 by Talcott was attributable to goodwill. It is our decision that the gain realized by petitioner on the sale of its notes receivable to Talcott is to be taxed to petitioner as ordinary income. Decision will be entered under Rule 50. Footnotes
1. SEC. 1221. CAPITAL ASSET DEFINED. For purposes of this subtitle, the term "capital asset" means property held by the taxpayer (whether or not connected with his trade or business), but does not include - * * *
(4) accounts or notes receivable acquired in the ordinary course of trade or business for services rendered * * *;↩
2. But cf. (C.A. 5, 1963).↩